**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**DETRICK LAYFIELD,**

**Petitioner,**

**v.**                                                            **Civil Action No.: 3:20-CV-204
(GROH)**

**BRYAN ANTONELLI,**

**Respondent.**

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On October 28, 2020, Petitioner, a federal inmate, acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 challenging a prison disciplinary procedure, along with a memorandum and exhibits.  ECF Nos. 1, 1-1.[1]

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be dismissed without prejudice.

### II.    FACTUAL AND PROCEDURAL HISTORY

#### A.    Prison Disciplinary Proceedings

While Petitioner was incarcerated at FCI Greenville, [2] on September 1, 2017, he

---

[1]  All ECF numbers cited herein are from the instant case, 3:20-CV-204, unless otherwise noted.

[2]  At the time of the events which Petitioner complains in the instant petition, he was an inmate at FCI Greenville, in Greenville, Illinois, but he is now housed at Hazelton USP in Bruceton Mills, West Virginia within the Northern District of West Virginia.

was charged with the prohibited offense of assaulting any person, or an armed assault on the institution's secure perimeter.  ECF Nos. 21-3, 21-7 at 2.  On September 28, 2017, at approximately 2:43 p.m., Incident Report 3047698 was filed, which charged Petitioner with violations of Prohibited Act Code 101 (assaulting any person, or an armed assault on the institution's secure perimeter).  ECF Nos. 21-7 at 2, 21-8 at 1.

Petitioner was also indicted on October 18, 2017, and convicted by a jury on September 11, 2018, in the District Court of the Southern District of Illinois with three offenses related to the same incident.   S.D.Ill. 3:17-CR-30174, ECF Nos. 1, 57.  Petitioner appealed to the Seventh Circuit which affirmed his conviction on July 14, 2020.  S.D.Ill. 3:17-CR-30174, ECF No. 91-1.   The Seventh Circuit held that "the record contains ample evidence" supporting the jury's verdict and summarized the facts of the case:

> A jury convicted Detrick Layfield of assault with a dangerous weapon, with intent to do bodily harm, while he was a federal prisoner, and of two additional offenses. See 18 U.S.C. §§ 113(a)(3), 1512(c)(1), 1791(a)(2). The judge sentenced him to 92 months' imprisonment.  His sole argument on appeal is that the evidence does not support the conviction on the dangerous-weapon charge, because none of the witnesses testified that they saw the whole weapon when Layfield wielded it.
>
> At trial Scott Dilley testified that Layfield attacked him in his cell over an unpaid debt. He related that Layfield said: "[W]ell, I got something for you, you … coward" and then "pulled out a weapon" and continued an attack that began with an exchange of punches. Though Dilley did not see the entire weapon because the attack happened "so fast," he saw a gray "triangle-shape[d]" tip "like" the one atop the shank the government offered into evidence. As the prosecutor played a video recording of the attack, Dilley narrated that Layfield was "stabbing" at him. (Because of the inmates' distance from the cameras, the recordings do not show whether Layfield had a

weapon.) Dilley suffered a 1.25-inch laceration to his right arm, about a quarter inch wide and deep.

The nurse who examined Dilley testified as an expert. He opined that it was "unlikely" that this gash was caused by hitting an object such as his cell's locker, because the soft tissue there "would normally absorb impact" and not rip open.

Two other inmates testified that they had attempted to dispose of the shank. Damion Phipps, who observed only the end of the fight, did not see Layfield use a knife. But Phipps testified that, immediately after the fight, Layfield came to his cell and asked him to "get rid" of the knife that Layfield was holding. After Layfield dropped the knife on his floor and left, Phipps asked another inmate, Demarcus Spraggins, to assist. Spraggins testified that he took the knife and put it in the bottom of a dryer in the laundry room. While he saw only the end of the fight and did not see Layfield use a weapon, Spraggins identified the knife offered at trial as the one Phipps had asked him to hide. He had seen Layfield with the same knife two weeks before the assault.

Prison officers testified about their investigation of the incident and retrieval of the weapon. Officer Joseph Serio stated that, in an afternoon interview days after the incident, Spraggins described the shank to Serio and told him where to find it. Serio testified that he then told Matthew Shute, another officer, where the shank was, and Shute retrieved it that afternoon.

Shute testified differently. He said that he had retrieved the shank from the dryer in the morning, based on Serio's interview of Spraggins. He also testified that he found three weapons in the laundry but presented only one to Serio and Spraggins; the other two weapons did not resemble Spraggins's description. The officers submitted the weapon for DNA and fingerprint analysis, but the results were inconclusive.

Layfield argues that the evidence was insufficient in three respects. First, neither Dilley nor the other witnesses saw Layfield use a knife during the attack, so they could not be sure that the knife shown at trial was the one that Layfield used. Second, officers Shute and Serio testified inconsistently about when Shute found the weapon in the dryer, thereby "undermin[ing] the investigation of its discovery." Third, the

case against him lacked DNA and fingerprint evidence, and
the video was inconclusive.

Id. at 1 – 3; United States v. Layfield, 812 F. App'x 385 (7th Cir. 2020).

After Petitioner was indicted, Lt. Phillips delivered to him on October 23, 2017, a copy of the Incident Report which provided him notice of the DHO hearing. ECF No. 21-8 at 1. Following his trial in the Southern District of Illinois, the DHO hearing was held on May 9, 2019,[3] at which time Petitioner waived[4] his right to have a staff representative assist him at the hearing. Id. Petitioner did not waive his right to call witnesses, and presented written statements[5] of unavailable witnesses. Id. In his defense, Petitioner stated, "I didn't have a weapon. I did get into a fight. He was cut in the locker when we were tussling around." Id. Petitioner made a statement during the investigation that, "this whole case is made up." Id. at 2.

Following the hearing, the DHO found that Petitioner committed the prohibited act of assaulting another inmate with serious injury, in violation of Code 101. Id. at 3. The DHO wrote in his report that he relied on: (1) the investigation contained in the reporting officer's Incident Report; (2) the statements of Petitioner during the investigation and at

---

[3] The DHO report notes that he "considered that the disciplinary process was delayed due to SIS investigation, subsequent referral to the FBI/AUSA, and [Petitioner] being out on federal writ. The UDC was completed prior to [Petitioner] going out on the federal writ and no extension is necessary. The DHO does not believe the delay hindered [Petitioner] from defending [him]self against this charge." ECF No. 21-8 at 2.

[4] The DHO report notes that, "during the Unit Discipline Committee Hearing, [Petitioner] requested Tool Room Officer Duncan as [his] staff representative; however, [he] elected to waive staff representation prior to the DHO hearing. [Petitioner] signed off on the Notice of Hearing Form verifying that [he] waived [his] staff representative." ECF No. 21-8 at 2. Petitioner claims that he did not waive his right to staff representation and that the DHO report contains false information. ECF No. 25 at 9.

[5] The witness statements read that one witness, Hill, "seen Dilley attacking my cellie from coming out of his cell kick and swinging on him. I didn't see any weapon at no time." A second witness, Freeman, stated: "I seen the fight, but I didn't see any weapon. To be honest inmate Layfield was getting backed down my inmate Dilley." ECF No. 21-8 at 1.

the hearing; (3) the written statements made by Petitioner's inmate witnesses; (4) eight pages of documentary evidence submitted by Petitioner; (5) medical assessments; (6) photographs; (7) video footage; and (8) confidential information from the Special Investigation Services (SIS) report.[6] Id. at 2 – 3. Further, the DHO wrote:

> The DHO considered the video footage provided for the incident. The video footage depicts you going into a cell on the top range. The door of the cell coming open with you backing out of the cell followed by Dilley pushing you out of the cell. You appear to be making a stabbing motion toward Dilley with your left arm. Dilley pushes and kicks at you to keep you away. You back away as Dilley follows you around the top range walk. You again make a stabbing motion with your left arm as Dilley kicks at you again. You continue to back away from Dilley until another inmate comes between you. You turn and walk down the range away [from] Dilley and the place of the incident. You walk to a doorway next to the stairs and stand in the doorway. Dilley returns to his cell. You go down the stairs to the bottom range as staff passes you on the stairs. You walk around of the bottom range and then go into a cell.
>
> In deciding this case, the DHO considered your denial of the charge; however, during an SIS investigation it was determined by using video footage, medical records , physical evidence, and inmate interviews that you assaulted Dilley with a weapon. You were observed repeatedly attempting to cut Dilley with a homemade weapon only seconds after entering Dilley's cell, on video footage. Dilley's injuries were consistent with being assaulted by the homemade weapon recovered by staff. Video footage showed Dilley fending off your repeated attempts to inflict further injuries with the homemade weapon. The DHO advised you that when a weapon is used in an assault the victim does have a right to defend himself from being injured or killed. The DHO considered the written statements made by your witnesses. The DHO advised you that the[ir] statements are directly refuted by the video

---

[6]  Petitioner submitted various documents which appear to be associated with the SIS report, including: (1) a memorandum dated September 1, 2017, from D. Querica, Operations Lieutenant [ECF No. 25-3]; (2) a memorandum dated September 3, 2017, from M. Shute, SIS Technician [ECF No. 25-4]; (3) a memorandum dated September 4, 2017, from J. Serio, SIS Technician [ECF No. 25-5]; (4) a memorandum dated September 4, 2017, from Richard Smith, SIS Lieutenant [ECF No. 25-6]; and (5) a memorandum dated September 4, 2017, from M. Patterson, Captain [ECF No. 25-7].

footage. The DHO believes these witnesses may be less than truthful to assist you in avoiding the consequence of your actions, therefore, greater weight was given to the reporting officer and the evidence provided. The DHO considered your claim that you did not use a weapon; however, the DHO reviewed the video footage that staff review and by using sound correctional judg[ment] you do appear to be making a stabbing motion during the incident with Dilley. The injuries are consistent with a weapon being used during the incident. The DHO considered your claim that the whole case is made [up]; however, greater weight was given to the reporting officer and the evidence which shows that you assaulted Dilley with a weapon. The DHO considered the confidential information . . . from the SIS report, because it was found reliable and was particular to the incident and other corroborating evidence support it. Therefore, greater weight was given to the reporting officer's report and the evidence provided.

The greater weight of the evidence supports that you assaulted another inmate with serious injury, based upon the reporting officers documented report, SIS report, photographs, medical assessments, and the greater weight of evidence; all shows you committed the prohibited act. Consequently, the DHO finds that you committed the prohibited act of [a]ssaulting any person with serious physical injury, Code 101.

ECF No. 21-8 at 3.  As a result of his conviction, Petitioner was sanctioned to 41 days loss of good conduct time, 90 days of commissary restriction, 90 days of telephone restriction, and 90 days loss of visitation.  ECF No. 21-8 at 3.

**B.    Instant § 2241 Petition**

Petitioner's four grounds for relief allege that his Constitutional rights were denied because: (1) the charges against him were fabricated based on racial profiling; (2) when he was transferred from FCI Greenville[7], Petitioner was still going through the disciplinary proceeding process, and his transfer denied him the right to a timely DHO hearing; (3)

---

[7]   Petitioner acknowledges he was transferred from FCI Greenville pursuant to a writ to answer federal charges.  ECF No. 1 at 6.

Petitioner was required to defend himself in court in a trial before defending himself in administrative proceedings for some, but not all, of the same charges; and (4) Petitioner was never written an incident report for possession of a fabricated weapon, an offense he was convicted of committing in federal court.  ECF No. 1. at 5 – 6.

Petitioner claims that he exhausted the grievance procedure and asserts that he presented his claim to the prison's internal grievance procedure, but states that his claims have been rejected.  Id. at 7 – 8.  Petitioner also asserts that he presented his claim to the Bureau of Prisons but states that his DHO appeal was rejected as untimely.  Id. at 8.  Petitioner requests that the DHO decision be overturned, that his disciplinary reports be expunged from his institutional record, and that he be released from incarceration.  Id.

In his memorandum in support of his petition, Petitioner claims that he was not timely provided a copy of the incident report.  ECF No. 1-1 at 1 – 2.  Further, Petitioner claims that after being convicted at the May 9, 2019, DHO hearing, he did not timely receive a copy of the DHO report until November 17, 2019.  Id. at 5 – 6.

Petitioner filed a motion styled as a motion to address the courts on December 2, 2020.  ECF No. 19.  That motion asserts that the BOP and institution are trying to deprive Petitioner of his right to fight what he characterizes as a false accusation.  Id.  Petitioner asks the Court to consider all evidence submitted by Petitioner and expunge the DHO conviction.  Id.

Respondent filed a motion to dismiss or for summary judgment, with a memorandum and exhibits in support thereof, on January 20, 2021.  ECF Nos. 21, 21-1 through 21-10.  Respondent argues that: (1) Petitioner's due process rights were not violated during his disciplinary proceedings because the incident report was delivered to

7

Petitioner more than a year and a half before the hearing [ECF No. 21-1 at 9 – 11]; (2) the DHO's findings were based on sufficient evidence [Id. at 13 – 14]; and (3) Petitioner, although he has filed fifty administrative remedies during his time in BOP custody, has failed to exhaust his administrative remedies as to the instant claims [Id. at 7, 14 – 17].

Petitioner filed several documents in response[8] to the motion to dismiss, although none of those documents was styled as a response to the motion to dismiss:

(1) on February 2, 2021, a motion to refute untimely filing wherein Petitioner asks the Court to "refute all allegations of untimely filing of [the] administrative appeal process" [ECF No. 24];

(2) on February 2, 2021, a document styled "motion to present relevant facts and violations of due process" wherein Petitioner argues that he was not given an incident report, that he was convicted in the district court without being able to present exculpatory evidence, that he was prejudiced by being deprived of his right to prove his innocence in the institution's administrative proceedings before being tried in court for the same actions, that the incident report was fabricated, and requesting an evidentiary hearing [ECF Nos. 25, 25-1 through 25-12];

(3) on February 5, 2021, a motion requesting permission to present exhibits including the docket sheet from his criminal conviction in the Southern District of Illinois, case number 3:17-CR-30174, a letter from correctional counselor W. Barr, and a 42-page excerpt from a transcript from an unidentified and undated

---

[8]   The Court notes that pursuant to the Local Rules of Prisoner Litigation Procedure, Rule 13, "Prisoners shall not file pleadings or papers not authorized by these Rules.  Pleadings or papers not authorized by these Rules will be stricken from the docket by the Court and returned to the prisoner." Notwithstanding that Petitioner's filings appear not to be authorized by these Rules, the Court has considered the arguments contained therein.

proceeding from two witnesses, Serio and Shute [ECF Nos. 26, 26-1, 26-2];

(4) on February 5, 2021, a motion presenting legal claims which among other claims, asserted that Petitioner exhausted his administrative remedies, but "was continuously rejected" [ECF No. 27 at 2];

(5) on February 5, 2021, an addendum styled "motion to addendum" which again asserted that Petitioner was falsely accused in the Incident Report and that the DHO report was falsified, and which asserts that Petitioner exhausted all remedies [ECF Nos. 28, 28-1 at 1 – 2, 28-2]; and

(6) on May 10, 2021, a motion for summary judgment with exhibits wherein Petitioner asks the Court to grant him relief because he was never charged with possessing a weapon at the institutional level, and wherein Petitioner claims his criminal conviction was obtained through perjury [ECF Nos. 29 at 21, 29-1 through 29-11].

### III.    STANDARD OF REVIEW

#### A.    Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing Section 2255 Cases in the U.S. District Courts.

#### B.    Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those *pro se*

pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[9] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

### C.    Habeas Corpus Petitions Filed Pursuant to 28 U.S.C. § 2241

A petition filed pursuant to § 2241 is the appropriate method to challenge a due process violation as part of a prison disciplinary proceeding. Burgess v. Dunbar, 628 Fed. Appx. 175 (4th Cir. 2015).

---

[9] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

**D.    Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that  a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that  the plaintiff can prove  no set of facts  in support of his claim which would entitle him to relief."  Conley, 355 U.S. at 45-46.

Plaintiff is proceeding pro se and therefore the Court must liberally construe his pleadings.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face."  Id. at 555, 570.  In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570.  Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his  complaint  which  is  based  on  cognizable  legal  authority  and  includes  more  than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. <u>Id.</u> at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 679. Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. <u>Id.</u> at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of North Carolina v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993); <u>see also</u> <u>Martin</u>, 980 F.2d at 952.

### E.    Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986). However,

"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact."  477 U.S. at 323.  Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id.  The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id.   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than

encourage mere speculation.  <u>Anderson</u>, <u>supra</u>, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita</u>, <u>supra</u>, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Id.</u> citing <u>First Ntl. Bank of Ariz. v. Cities Service Co.</u>, 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968).  See <u>Miller v. Fed. Deposit Ins. Corp.</u>, 906 F.2d 972, 974 (4th Cir. 1990).  Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. <u>Matsushita</u>, <u>supra</u>, at 587-88. <u>Anderson</u>, <u>supra</u>, at 248-49.

## IV.    ANALYSIS

It appears to the Court that when substantively considered, Petitioner's claim is without merit; however, Petitioner is not entitled to relief based on his failure to exhaust administrative remedies.

### A.    Petitioner's Due Process Rights Were Not Violated

Petitioner contends that his due process rights were violated during the prison disciplinary process, including the DHO proceedings held on May 9, 2019.  ECF No. 1.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  When a prison disciplinary hearing may result in the loss of good time credit, due process requires the following:

1.     giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;

2.     providing the prisoner a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action;

3.     allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;

4.     if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case, permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a sufficiently competent inmate designated by staff; and

5.     providing impartial factfinders.

Id. at 564-566, 570-571.

In the present case, the Court finds that Petitioner was provided all the due process required for a disciplinary proceeding for several reasons.  First, Petitioner received notice of the incident report on October 23, 2017, more than eighteen months before the DHO hearing.  ECF No. 21-8 at 1.  Second, the DHO Report includes several paragraphs which explain the specific evidence relied on to support the findings, including the statement of the staff member who reported the incident, the statements of Petitioner and his witnesses, photos, medical assessments, video evidence, documentation from the Petitioner and the SIS report.  Id. at 3.  Third, Petitioner was offered the opportunity to call witnesses, which he did in addition to making a statement in his own defense.  Id. at 1.  Fourth, Petitioner is not illiterate, nor did the complexity of the issue make it unlikely that Petitioner could collect and present the evidence necessary for an adequate

15

comprehension of the case; thus Petitioner did not require the aid of a fellow prisoner or staff.  Nevertheless, Petitioner was offered, but declined staff aid at the hearing before the DHO.  Id. at 1.  Finally, the DHO was an impartial factfinder, M. Puckett, who was not the staff member who authored the Incident Report.  Id. at 4.

The results of a prison disciplinary proceeding will be upheld so long as there is "some evidentiary basis" to support the decision.  Superintendent v. Hill, 472 U.S. 445, 455. (1985) ("due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing."  Id. at 457).  Determining whether there is some evidentiary basis to support a decision:

> Does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . . .

Id. at 455 - 56.

In this case, the Disciplinary Hearing Officer found Petitioner guilty of assaulting any person with serious physical injury, in violation of Prohibited Acts Code § 101.  The reasons listed by the DHO for his finding, included the statement of the reporting staff member in the Incident Report, photographs, video footage, Petitioner's witnesses' statements, eight pages of documentary evidence, SIS report, and medical assessments. ECF No. 21-8 at 3.  The DHO also considered the statement of Petitioner, but found the greater weight of the evidence supported Petitioner's conviction.  Id.

This Court finds that the evidentiary requirement standard enunciated in Superintendent v. Hill, supra, was met.  Therefore, the undersigned finds that the

Disciplinary Hearing Officer's decision is supported by some evidence and that the Petition as a whole should be denied.

### B.    Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.  42 U.S.C. § 1997e(a).  "Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions.  Failure to exhaust may only be excused upon a showing of cause and prejudice."  McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634-35 (2d Cir.2001), Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981)).  Exhaustion as provided in § 1997e(a) is mandatory, regardless of the relief offered through administrative procedures.  Booth v. Churner, 532 U.S. 731, 741 (2001).  Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court.  Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth, 532 U.S. at 741).  "Those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'"  Porter, 534 U.S. at 524.

Pursuant to McClung, failure to exhaust may only be excused upon a showing of cause and prejudice.  Petitioner claims that his failure to exhaust is excusable because his administrative remedies were repeatedly rejected.  ECF No. 1 at 7 – 8.  As recognized in Carmona, supra, which was cited by the Fourth Circuit in its opinion in McClung:

> [T]he interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the federal agency review process. Following the administrative procedures could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the

17

> agency level at a time when the disputed events are still
> relatively fresh in witnesses' minds. In this sense, it is the
> analogue of the exhaustion of state remedies requirement for
> a state prisoner seeking federal habeas review, and the
> results governing failure to take this path should be the same.
>
> Administrative autonomy is also served by requiring that a
> federal prisoner justify his failure to exhaust his intra-Bureau
> remedies. When, however, legitimate circumstances beyond
> the prisoner's control preclude him from fully pursuing his
> administrative remedies, the standard we adopt excuses this
> failure to exhaust.

Carmona, 243 F.3d at 634 (internal citations omitted).

The petition states that Petitioner did not exhaust available administrative remedies. ECF No. 1 at 7 – 8. Petitioner states that he filed an internal grievance at the prison and a claim with the Bureau of Prisons, but that those administrative remedies "continue[ ] to be rejected and considered untimely". Id.

Respondent argues that Petitioner has filed more than 50 administrative remedies while in BOP custody, but has failed to exhaust his claims related to this action. ECF Nos. 21-1, 21-6. In support of that argument, Respondent filed the declaration of Howard Williams, a legal assistant at the Mid-Atlantic Region of the BOP, regarding Petitioner's Administrative Remedy History. ECF No. 21-1 at 16. Williams' declaration is accompanied by exhibits from Petition's administrative history that demonstrate he did not exhaust his administrative remedies as they relate to the DHO's decision. ECF Nos. 21-5, 21-6. Petitioner made a total of six requests to the Central Office, all of which were rejected in relation to his DHO Appeal:

1.    REMEDY ID: 1002266-A1[10] was rejected on March 27, 2020, because

     inmate submitted his request or appeal to the wrong level or wrong office

---

[10] Each administrative grievance is assigned a specific remedy ID. The numerical portion of the

(REJ WRL), and the remarks direct him to "follow instructions as noted on the regional level" [ECF Nos. 21-5 at 19, 21-6 at 4];

2.      REMEDY ID: 1011872-A1 was rejected April 13, 2020, because Regional appeal pending investigation and was due on May 18, 2020, Petitioner was instructed to file his BP-11 (appeal) on or after that date [ECF No. 21-5 at 21];

3.      REMEDY ID: 1011872-A2 was rejected on July 10, 2020, and instructed to see remarks (OTH), which read that "If staff provide a memo stating the late filing was not your fault, then re-submit to the level of the original rejection" [Id. at 22];

4.      REMEDY ID: 1011872-A3 was rejected on July 15, 2020, and instructed to see remarks (OTH) , which read that "If staff provide a memo stating the late filing was not your fault, then re-submit to the level of the original rejection" [Id.];

5.      REMEDY ID: 1011872-A4 was rejected on October 5, 2020, because the inmate appealed more than one incident report number on a single appeal, and advised that inmates must file a separate appeal for each incident number.  Petitioner was instructed to also see remarks which read "contains doc[ument]s from 1011872 and 917330, which must be appealed

---

Remedy ID before the hyphen is known as the case number.  Following the hyphen there is a submission ID comprised of one letter and one number.  The letter indicates which level of the BOP administrative remedy program has received the grievance.  The letter "F" indicates that the submission was received by an individual federal correctional facility.  The letter "R" indicates that the submission was received by a Regional office.  The letter "A" indicates that the submission was received by the BOP's Central Office. Following those letters is a number which indicates the number of times an inmate has submitted the same request at the same level of the BOP grievance program.

separately. Absent staff memo explaining your late filing, both appeals are untimely" [ECF No. 21-5 at 25];

6. REMEDY ID: 1034991-A1 was rejected on November 5, 2020, with instructions to see remarks (OTH), which stated, "if staff provide a memo stating late filing was not your fault, then resubmit to the level of the original rejection" [Id. at 26].

A review of the Administrative Remedy Generalized Retrieval documents show that Petitioner did not file another administrative remedy after his remedies were rejected on November 5, 2020. ECF Nos. 21-5 at 26, 21-6 at 5. Therefore, it appears that Petitioner has failed to exhaust all administrative remedies available to his claim. Accordingly, Petitioner's claim may not be considered under § 2241, and this Court is without jurisdiction to consider his petition. When subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S.Ct. 1003, 1012–16 (1998); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999).

## V.    RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DENIED.** It is further **RECOMMENDED** that Respondent's Motion to Dismiss, or in the Alternative, for Summary Judgment [ECF No. 21] be **GRANTED** and that the § 2241 proceeding be **DISMISSED WITHOUT PREJUDICE** based on Petitioner's apparent failure to exhaust administrative remedies.

It is further **RECOMMENDED** that Petitioner's pending motions [ECF Nos. 19, 24, 26, 27, 29] be **DENIED.**

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED:**     May 25, 2021

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE